IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-142-D

| | |
|---|---|
| LINDA K. BONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| THE TRUSTEES OF CAPE FEAR ) | |
| COMMUNITY COLLEGE, ) | |
| ) | |
| Defendant. ) | |

On August 6, 2018, Linda K. Boney ("Boney" or "plaintiff") filed a complaint against Cape Fear Community College Foundation, Inc. [D.E. 1]. On August 22, 2018, Boney filed an amended complaint against Cape Fear Community College [D.E. 6].[1] On September 12, 2018, Boney filed a second amended complaint [D.E. 11] against the Trustees of Cape Fear Community College ("Cape Fear" or "defendant"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and retaliatory discharge in violation of Title VII.[2] On November 12, 2018, Cape Fear moved to dismiss Boney's second amended complaint for failure to state a claim [D.E. 16] and filed a memorandum in support [D.E. 17]. On the same day, Cape Fear answered the complaint [D.E. 18], filed an amended motion to dismiss for failure to state a claim [D.E. 19], and filed a supporting

---

[1] Boney did not include Cape Fear Community College Foundation, Inc., in the caption of her amended complaint, thereby dismissing it as a defendant. See [D.E. 6].

[2] Boney did not include Cape Fear Community College in the caption of her second amended complaint, thereby dismissing it as a defendant. See [D.E. 11].

memorandum [D.E. 20]. On November 26, 2018, Boney responded in opposition [D.E. 22]. On December 9, 2018, Cape Fear replied [D.E. 23]. As explained below, the court grants Cape Fear's amended motion to dismiss.

I.

Boney began working at Cape Fear Community College, a community college in Wilmington, North Carolina, in August 2001. See 2d Am. Compl. [D.E. 11] ¶¶ 9, 13. Boney started as a database technician. See id. ¶ 14. After receiving satisfactory performance reviews in that role, Cape Fear promoted Boney to helpdesk coordinator of IT services in 2003. See id. ¶ 15. In 2012, Boney became desktop support manager of IT services, and from 2013 until 2017, Boney worked for the Vice President of Cape Fear's IT department. See id. ¶¶ 16–17. Boney received satisfactory performance evaluations in all of these roles. See id. ¶¶ 13–17, 19.

In August 2017, Cape Fear hired Kumar Lakhavani ("Lakhavani") as the Director of IT Services. See id. ¶ 18. From the outset, Lakhavani criticized Boney's work performance. See id. ¶¶ 20–25. Specifically, Lakhavani criticized Boney's management of daily operations and projects, ability to meet deadlines, and communication skills. See id. ¶ 21. On separate occasions, Boney made suggestions concerning the department's hiring and computing equipment decisions. See id. ¶¶ 23–24. Lakhavani rejected Boney's suggestions, but when Robert Carter ("Carter"), a younger male employee, made the same suggestions, Lakhavani praised Carter. See id. ¶¶ 22–24. On one occasion, Boney asked to work from home so that she could have her roof repaired. See id. ¶ 25. Although Lakhavani stated that he would accommodate working remotely for family issues, Lakhavani did not think that allowing repairmen into one's home was a sufficient reason to work remotely. See id. Thus, he denied the request. See id. After Boney used vacation time to stay home, Lakhavani changed the policies to stop allowing employees to work remotely. See id.

2

On November 30, 2017, Boney spoke with the Executive Director of Human Resources, Sharon Smith ("Smith"), about her conflicts with Lakhavani. See id. ¶ 26. Boney told Smith that she believed that Lakhavani treated her differently due to her age and sex, and Boney opined that he treated younger male employees differently. See id. Smith responded that Lakhavani's supervisor, Melissa Singler ("Singler"), would not tolerate discriminatory behavior. See id. ¶ 27.

On December 6, 2017, Human Resources convened a meeting with Smith, Lakhavani, and Boney. See id. ¶ 28. At the meeting, Boney received a written formal warning. See id.; [D.E. 11-2]. The warning stated that Boney's performance was below expectations in understanding projects, meeting deadlines, communication skills, e-mail etiquette, attention to detail, and giving clear directions to subordinates. See [D.E. 11-2]. The warning provided specific instructions for Boney to follow to improve her performance. See id. Lakhavani also made additional comments, which indicated his belief that Boney could improve her performance in light of her sixteen years of employment at Cape Fear. See id. Lakhavani stated that he would "make [himself] available to clarify any assignments or projects" because he desired to "help [Boney] succeed in [her] job." Id. However, the warning also stated that, if Boney continued to perform below expectations, further action—including possible termination—would be taken. See id.

After this meeting, Lakhavani met with Boney weekly. See 2d Am. Compl. [D.E. 11] ¶ 29. Boney had to provide regular updates on all assignments to Lakhavani. See id. Lakhavani documented each instance in which he was not satisfied with Boney's performance. See id. Boney also took an e-mail etiquette course to improve her communications skills. See id. ¶ 30.

In early February 2018, Lakhavani asked Boney to obtain a quote for a piece of equipment valued at approximately $10,000. See id. ¶ 31. Because of her experience, Boney believed that the budgetary process for such a large purchase would require a hearing, and the next hearing was

3

scheduled for April 2018. See id. Thus, Boney did not believe that the request was time-sensitive. See id. ¶ 32. A week later, Lakhavani requested an update. See id. Boney responded that she did not realize the urgency of the assignment and had not obtained the price quote. See id. Lakhavani responded that he thought Boney's behavior was insubordinate because Boney had not yet obtained the quote. See id.

Because of Boney's deteriorating relationship with Lakhavani, Boney feared that Lakhavani would soon fire her. See id. ¶ 33. If fired, Boney believed that she would lose her state retirement benefits, including health care and a pension. See id. Consequently, on February 8, 2018, Boney retired. See id. ¶ 34. Carter replaced Boney. See id. ¶ 40.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her]

4

claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

As for Cape Fear's initial motion to dismiss for failure to state a claim, the motion concerns only Boney's ADEA claim. See [D.E. 16] 1. On November 12, 2018, Cape Fear filed both the amended motion to dismiss [D.E. 19] and the initial motion to dismiss [D.E. 16]. The amended motion addresses Boney's ADEA claim and Title VII sex discrimination claim. See [D.E. 19] 1. Because Cape Fear's initial motion does not address anything that its amended motion does not also address, the court denies as moot Cape Fear's initial motion to dismiss.

B.

Boney alleges an ADEA claim based on a constructive discharge theory. See 2d Am. Compl. [D.E. 11] ¶¶ 35–42. In relevant part, the ADEA forbids employers to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his

5

compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Boney lacks direct evidence of age discrimination and proceeds under the burden shifting-framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004).

Under this framework, a plaintiff first must establish a prima facie case. See, e.g., O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–12 (1996). If the plaintiff establishes a prima facie case, the defendant must offer a legitimate, non-discriminatory reason for the adverse employment decision. See McDonnell Douglas, 411 U.S. at 802–03. If the defendant meets its burden of production, the plaintiff has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King v. Rumsfeld, 328 F.3d 145, 150–52 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Mereish, 359 F.3d at 336 (quoting Burdine, 450 U.S. at 256). To prevail, the plaintiff must establish that "age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); see Duffy v. Belk, Inc., 477 F. App'x 91, 93 (4th Cir. 2012) (unpublished); Bodkin v. Town of Strasburg, 386 F. App'x 411, 413 (4th Cir. 2010) (per curiam) (unpublished).

To prove a prima facie case of age discrimination under the McDonnell Douglas framework, Boney must establish that (1) she was in the age group protected by the ADEA; (2) she was actually or constructively discharged; (3) at the time of her discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) after her discharge, she was replaced by

6

someone of comparable qualifications who was substantially younger. See O'Connor, 517 U.S. at 310–11; Ruff v. Target Stores, Inc., 226 F. App'x 294, 300–01 (4th Cir. 2007) (unpublished); E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 603 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 335 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 740 (E.D.N.C. 2012).

To survive a motion to dismiss, a plaintiff need not "plead facts sufficient to establish a prima facie case of [age] discrimination," but need only plausibly allege a statutory claim. Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017); see McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585–88 (4th Cir. 2015); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764–65 (4th Cir. 2003); Brown v. Goodwill Indus. of E. N.C., Inc., No. 4:17-CV-144-D, 2019 WL 80444, at *3 (E.D.N.C. Jan. 2, 2019) (unpublished). Thus, Boney must only plausibly allege that she is a member of the ADEA's protected group, that she suffered an adverse employment action, and that her employer took that action against her because of her age. See Allen v. City of Raleigh, No. 5:13-CV-522-D, 2014 WL 840735, at *7 (E.D.N.C. Mar. 4, 2014) (unpublished).

As for Cape Fear's amended motion to dismiss Boney's ADEA claim, Boney was 62 years old when she resigned. See 2d Am. Compl. [D.E. 11] ¶ 38. Thus, she was a member of a protected group under the ADEA. Boney alleges that Cape Fear constructively discharged her from her position because of her age. See id. ¶ 37.

To state a constructive discharge claim, a plaintiff must plausibly allege that (1) an employer acted deliberately to induce resignation and (2) the employee's working conditions were so intolerable that a reasonable person would have resigned. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733–34 (4th Cir. 1996); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353–54 (4th Cir. 1995);

7

Webster v. Town of Warsaw, 66 F. Supp. 3d 706, 708–09 (E.D.N.C. 2014). These elements are the same in the context of an ADEA claim. See, e.g., Bristow v. Daily Press, Inc., 770 F.2d 1251, 1254–56 (4th Cir. 1985). The working conditions must be "so intolerable that a reasonable person would have felt compelled to resign." Pa. State Police v. Suders, 542 U.S. 129, 147 (2004); see Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186–88 (4th Cir. 2004). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, FSB, 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted); see Bristow, 770 F.2d at 1255 (stating that an employee "is not . . . guaranteed a working environment free of stress"). "Because the claim of constructive discharge is so open to abuse by those who leave employment [voluntarily], [the Fourth Circuit] has insisted that it be carefully cabined." Honor, 383 F.3d at 187 (quotation omitted).

Boney has not plausibly alleged either the objective or subject element of an ADEA constructive discharge claim. Lakhavani's higher expectations for Boney's work performance, and the measures that he took to improve Boney's performance, do not constitute objectively intolerable conditions. Moreover, Lakhavani intended to help Boney improve her performance and thereby retain her position. Lakhavani did not intend to compel Boney's resignation. Thus, Boney, by voluntary resigning to protect her retirement benefits, does not plausibly allege an ADEA constructive discharge claim. See, e.g., Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996), overruled on other grounds by Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998). Because Boney has not plausibly alleged constructive discharge, her voluntary resignation is not an adverse employment action under the ADEA.

In opposition to this conclusion, Boney contends that the formal reprimand on December 6,

2017, substantially changed her responsibilities because she had to meet weekly with Lakhavani and provide updates that comparable supervisors did not. See [D.E. 22] 13–14. "Adverse employment actions include those that 'constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Jolly v. Univ. of N.C. at Wilmington, 831 F. Supp. 2d 916, 920 (E.D.N.C. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see 29 U.S.C. § 623(a)(1); Johnson v. Pitt Cty. Bd. of Educ., No. 4:16-CV-214-D, 2017 WL 2304211, at *11 (E.D.N.C. May 25, 2017) (unpublished). A formal written reprimand for insufficient performance, without more, does not amount to an adverse employment action. Cf. Darnell v. Tyson Foods, Inc., 536 F. App'x 366, 369–70 (4th Cir. 2013) (per curiam) (unpublished); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). Lakhavani's decision to require weekly meetings, timely updates on all projects, and e-mail etiquette classes for Boney also do not constitute adverse employment actions. Notably, despite additional oversight and training, Boney retained the same responsibilities, pay, and benefits. Indeed, Boney alleges that her "active engage[ment]" in the corrective measures demonstrates that she was meeting her employer's legitimate expectations. See 2d Am. Compl. [D.E. 11] ¶ 39. Thus, Boney has failed to plausibly allege an adverse employment action. The "mere fact" that Lakhavani's new requirements made Boney's job "less appealing" is insufficient. James, 368 F.3d at 376; see Boone v. Goldin, 178 F.3d 253, 255–56 (4th Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006).

Alternatively, Boney fails to plausibly allege that, but for her age, Cape Fear would not have taken these actions. Boney's allegations make clear that Cape Fear took these actions concerning oversight and training in response to Boney's poor performance, not to her age. See Gross, 557 U.S.

9

at 180; Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 234 (4th Cir. 2016); Arthur v. Pet Dairy, 593 F. App'x 211, 216, 219–20 (4th Cir. 2015) (per curiam) (unpublished); Tavernier v. Health Mgmt. Assocs., Inc., 498 F. App'x 349, 350 (4th Cir. 2012) (per curiam) (unpublished); Johnson, 2017 WL 2304211, at *11. In opposition, Boney asserts that she does not pose "naked allegations" of age discrimination and that discovery will answer any questions concerning Cape Fear's motives. See [D.E. 22] 7. The court rejects this argument. Boney's allegations of age discrimination are not plausible in light of her conflicts with Lakhavani and her poor performance. Accordingly, the court grants Cape Fear's motion to dismiss Boney's ADEA claim.

C.

Boney alleges a sex discrimination claim under Title VII. See 2d Am. Compl. [D.E. 11] ¶¶ 43–50. In relevant part, Title VII forbids employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

Without direct evidence of sex discrimination, Boney must show that (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); Howard, 262 F. Supp. 3d at 331; McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 611 (E.D.N.C. 2006). In the context of a motion to dismiss, Boney need only plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans, 780 F.3d at 585–88. Thus, Boney must plausibly allege that Cape Fear took an adverse employment action against her because of her sex. See id. at 585.

However, empty allegations of a causal connection between an employee's sex and the alleged discrimination are insufficient to state a plausible claim. See id. at 585–86; Brown, 2019 WL 80444, at *4. Rather, the employee must plausibly allege that the motive to discriminate was at least one of the employer's motives. See Nassar, 570 U.S. at 343; Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016); Huckelba v. Deering, No. 5:16-CV-247-D, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished).

As for Cape Fear's motion to dismiss for failure to state a claim, Cape Fear argues that Boney fails to plausibly allege that it took any adverse action against her or that it acted on the basis of her sex. See [D.E. 20] 12–15. Boney, who is a member of a protected class, focuses on three allegations: (1) Lakhavani disregarded her suggestions on at least two occasions but not similar suggestions made by a male coworker, (2) Lakhavani increased his supervision of Boney, and (3) Boney was the only female manager in Cape Fear's IT department and the only manager who was "discharged" after Lakhavani became director. See 2d Am. Compl. [D.E. 11] ¶¶ 46–48. The second allegation is conclusory, and the court need not accept it as true. The first and third allegations, while possibly "consistent with discrimination," do not "alone support a reasonable inference that" sex discrimination motivated these actions. McCleary-Evans, 780 F.3d at 586 (emphasis omitted). Moreover, the third allegation assumes that Cape Fear actually or constructively discharged Boney. Boney does not allege the former, and the latter is a legal conclusion that is not entitled to an assumption of truth. Thus, the court grants the motion to dismiss Boney's Title VII sex discrimination claim.

Alternatively, Boney has not plausibly alleged an adverse employment action. Under Title VII, an "adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Wash. Homes, Inc., 487 F.3d 208,

11

219 (4th Cir. 2007) (alteration and quotation omitted); see James, 368 F.3d at 375; Coleman v. Altec, Inc., No. 16-CV-954-D, 2018 WL 4289610, at *6 (E.D.N.C. Sept. 7, 2018) (unpublished) (collecting cases). As discussed, Boney has not plausibly alleged that Cape Fear's actions had a material adverse effect on the terms, conditions, or benefits of her employment. See, e.g., McDougal-Wilson, 427 F. Supp. 2d at 609–10. Moreover, Boney has not plausibly alleged constructive discharge. Accordingly, the court grants Cape Fear's motion to dismiss Boney's Title VII sex discrimination claim.

D.

Boney alleges a Title VII retaliation claim. See 2d Am. Compl. [D.E. 11] ¶¶ 51–57. Cape Fear did not move to dismiss this claim. See [D.E. 19] 1. In Cape Fear's reply, Cape Fear argues that Boney's claim is not plausible because Boney has failed to allege that any decisionmaker knew of her meeting with Smith to discuss her fear that Lakhavani was discriminating against her on the basis of her age and sex. See [D.E. 23] 6–8. Whatever the merits of this argument, Cape Fear did not move to dismiss Boney's Title VII retaliation claim. Thus, the claim survives. Whether the claim will survive a motion for summary judgment is an issue for another day.

III.

In sum, the court DENIES as moot Cape Fear's motion to dismiss [D.E. 16], GRANTS Cape Fear's amended motion to dismiss [D.E. 19], and DISMISSES Boney's ADEA and Title VII sex discrimination claims. The clerk shall continue management of the case.

SO ORDERED. This 5 day of March 2019.

Dever
JAMES C. DEVER III
United States District Judge

12